Appellant, Odebrecht, S.A. Et al. Mr. Marotta for the appellant, Mr. Goldman for the appellants. Mr. Marotta, good morning. Thank you, Judge Henderson. And may it please the Court, Sean Marotta on behalf of the appellant, Petrobras. In what the parties call EIG 2, this court held that on the facts alleged in EIG's operative complaint, EIG had made out a pre-emptive complaint. case of jurisdiction over Petrobras in the United States. But the allegations in EIG's operative complaint have not been borne out by the summary judgment evidence. For that reason, EIG 2 does not control this case. First and most importantly, this court credited allegations that Petrobras had targeted U.S. investors for Seche, including EIG. But discovery revealed that it was the other way around. EIG and potentially other U.S. investors targeted Petrobras for investment in Seche. But the summary judgment evidence revealed is that EIG approached Petrobras about the potential to invest in Seche, that Petrobras had no interest in taking U.S. money for Seche, and that EIG saw its task as convincing Petrobras to take money for Seche. And in fact, by the time of March, when Seche was handed off to be a separate and independent company, 90 percent owned by entities that were not Petrobras, EIG admitted it had never been solicited for money, and it still had not made an investment decision. In short, EIG was targeting Petrobras, trying to get Petrobras to take the money for Seche. And in fact, when Seche did close the first round of funding, it did so without any U.S. investors. Well, let me ask you this. In the opinion from the previous panel on motion to dismiss, do you contest that your client sent a presentation containing a, quote, cautionary statement for U.S. investors, or that you created one of these tips to facilitate foreign investment with regard to the Seche project? So there are two separate allegations, Judge Henderson. The first one, with respect to sending the presentation, in fact, what the summary judgment evidence showed, and this is JA 1236, showed that the presentation that contained that cautionary statement you refer to came from Society General. It was an old colleague of Mr. Corrigan, who was working at EIG, and said, hey, I hear your interest in investing in Brazil. Here's something you might be interested in that I got. So Petrobras did not send that presentation to Mr. Corrigan that contains that statement. That was the allegation at motion to dismiss that, of course, this court had to take as true, but it's not what the summary judgment record revealed. With regard to FIP Sandus, which is the entity that you referred to, Judge Henderson, yes, Petrobras was the architect of that structure, but foreign investment is not the same thing as U.S. investment. There are countries in the world, other than the United States, that Petrobras could have been considering when it created that particular structure, and there's no evidence that there was an intent to solicit U.S. investment through creating that structure. In fact, there were all number of sovereign wealth funds and other investors outside the United States that Petrobras could have possibly considered as investors. Can I ask a procedural question? I don't believe I saw it in your brief, but correct me if I'm wrong. Are you contending that the district court found the fact to be undisputed that was really in dispute? No. I mean, I think what's unusual in this case is we lay out our statement of facts in the blue brief literally directly just taking the district court's opinion at face value, because that's what we have to do on an interlocutory appeal from summary judgment. We're contesting immunity in this way. It's really EIG that's sort of rummaging through, I think, the summary judgment record to pull up things. So, no. I mean, they moved to dismiss. It was referred to the merits panel. But we just take the facts as we find them. All we're asking this court to do is to say the facts as related in the district court's opinion as taken to be undisputed, does that add up to what this court called targeting in EIG-2? That's a legal question. I think EIG has this conception that the abstract legal question on an interlocutory appeal of this court has to be like a 1292B sort of novel question of law. But as the Supreme Court has made clear, that is not the standard when it comes to interlocutory immunity. Can I ask, why do we even need targeting? In the prior opinion, we said targeting is sufficient to establish a direct effect. But the statutory standard is direct effect. So, suppose they had made statements just to the universe as if they were issuing a prospectus or something. And as a result of those statements, a U.S. investor took dollars in America and sent them off to Switzerland as part of this investment. Why isn't that a direct effect? And, you know, I'm thinking of the line from Weltover, which is the defendant did something. And as a result, in that case, it was money that should have flowed into the U.S. didn't. In this case, it would be money that shouldn't have flowed out of the U.S. did. Well, I think the concern that this court's and all the other circuits cases had is that sovereign shouldn't be held in the United States without doing something that I hate to say targeted. Unfortunately, a lot of these words kind of loop back in on themselves when we're talking about focus of behavior, but on the focus of behavior that is not referenced the United States. So I think in terms of statutory standard, it wouldn't be direct then because it is sort of dispersed throughout the entire world. So that's why the courts have always said. Why does that bear on directness? I think it bears on directness because it would be an indirect effect in the United States. The extent that. And remember, it's the suit must be based upon the actions that cause the direct effect in the United States. So what the courts, this court's cases and all the other courts cases said, merely suffering a harm in the United States, the mere fact that money has left your pocket is not sufficient to create a direct effect. And as a result, there must be something more and something more. Remember, this case, this court held in the IG2 was the targeting. But even if you conceive of the something more as being something else, there isn't in this case. Because, and I think it would be quite troubling if every time a U.S. investor is essentially going after a foreign sovereign and the foreign sovereign picks up the phone or takes a meeting in response to that outreach, they would then be subject to the United States suit. Also, if they. If if such a said, we welcome investment from any and everywhere. And they happen to get U.S. investment, but they don't target U.S. investment. What's the result there? I think there wouldn't be jurisdiction there, and I'll just emphasize Judge Wilkins, there is an important difference between such a and Petra Ross here because such a and this is actually one of the ways in which this case on summary judgment differs quite dramatically from the facts that were alleged in the IG2. The IG2 was alleged in this court credited the allegation that such a was just an instrumentality of Petra Bras that was created to carry on this bribe scheme. But what summary judgment evidence revealed is such a was actually formed for the real purpose of creating drill ships. And it was 90 percent owned by folks who weren't Petra Bras sophisticated Brazilian and other investors who had full control over the company, the same way any other shareholders do. So I think a key point, Judge Wilkins, is that such a is one of breaking the causal chain in our argument. And two, you just can't lump Petra Bras and such a together when talking about their conduct. But when it comes to Petra Bras conduct, to the extent they were willing to take meetings with anybody, that's not we would say targeting of the United States. It's simply picking up the phone. And that's why we refer to the personal jurisdiction. I'm getting back to Judge Katz's question. Let's suppose the undisputed facts were that Petra Bras said we want investment from any and everybody. We welcome it. And those were the operative facts. As Judge Katz's question alluded to, targeting isn't necessarily the test. We've said targeting is sufficient. But let's suppose those were the facts. Is that enough to result in a direct effect? I think it'd be a harder case for me, Judge Wilkins. I don't think it's enough, however, because it would still not be what this court and the other circuits have said, but something more. Because we know certainly from this court's cases that merely losing money in the United States is not sufficient to create a direct effect in the United States. There has to be something on top of that. So if all there is is undifferentiated information that is out in the world and the EIG says, boy, this sounds like a good deal, and Petra Bras says, goodness, your money is as good as anybody else's. Sure, we'll take it. I don't think that constitutes a direct effect in the United States, particularly where, as you have here, all of the meetings up to the time of the point of investment were occurring in Brazil. They were coming to Brazil to talk to a Brazilian company about a Brazilian investment. And I understand under the third clause, you don't necessarily have to have physical conduct in the United States, but whether you know whether somebody is targeting the United States or directing its actions towards the United States, and that's what differs this case from Atlantica, is are you going to the United States? And the answer is no. What case do you have in mind for the need something more proposition? Is it Odeyama? I will have it back for you when I come up on rebuttal, Judge Katsas. I think it's a number for this court's case. Okay. But I will certainly have it for you in rebuttal, unless the court has further questions. I'll give you a couple of minutes to reply. Thank you. Mr. Goldman? May it please the court? My name is Daniel Goldman. I represent the appellees in frame 11. Judge Henderson, you asked a question about the promotional materials that had the cautionary statement for U.S. investors. Petrobras used that in pitches to multiple U.S. investors, not just EIG, to U.S. banks, to private equity firms, to conferences. It was widely distributed. The document that EIG received, the district court found, was a basis for the fraud finding and summary judgment, regardless of whether it came from the Society General. I guess Petrobras put that document out in the street in commerce. In terms of Judge Katsas' question about targeting, targeting is not part of the statute. You simply have to have foreign conduct, commercial conduct, that causes a direct effect. The targeting concept originated in the Antares case in the Second Circuit, where in that case, it was very different from this case. In that case, Nigeria impounded a plane in Nigeria that just happened to be owned by a U.S. LLC. That was the only connection. The Second Circuit said, well, that's happening. That's law. That's not jurisdiction. And then the Atlantica case took that and said, well, there's got to be something more when the injury in the U.S. in a tort case, when the direct effect in a tort case is a U.S. injury, there has to be something where it cannot stand alone. That was this court's language in the prior opinion. It cannot stand alone. In this court's prior opinion, the court found that the EIG's allegations clearly made it so EIG's injury did not stand alone. And the evidence bears it out, whether or not you engage in the semantic aims of what's targeting and what's not. Because, as Judge Henderson correctly pointed out, from day one, Petrobras sought international investors, including U.S. investors. The structure of the investment vehicle, it's called the FIP, was meant to encourage international investment, to give international investors, including Americans, a tax break. Faraz from Petrobras in 2009 did a roadshow in the U.S. where he met with the U.S. Ex-Im Bank to seek over a billion dollars of debt capital. Petrobras created promotional materials in English with a cautionary statement for U.S. investors and distributed them wide. Petrobras met and, on many occasions, EIG in Brazil and also sent emails to the U.S. and let EIG into the data room, which contained English materials that were basically pitch books for this project. And this was an enormous project. Twenty-eight drill ships, $700 million apiece, one of the largest capital projects in history in Brazil. Of course they were going to seek international investors. They did it at every structure of the capital. They did it in the A equity that EIG invested in. They did it in debt. And they did it for the B equity, which was going to be the operators of the ships who wanted to get, as you might expect, a number of U.S. companies who were good at operating these drill ships were also going to take equity. So it was an enormous project with international investors, including American investors from all over the world. Let me ask you this about targeting, because I think that's become some sort of an issue in this case. To me, targeting in the economic realm is like marketing. When companies say, well, we're going to target teenagers or we're going to target old people or whatever, they're talking about marketing to them. That's all. And this was clearly, at least in my view, marketed to the United States and to EIG in particular. Right. I think that under any definition of the word targeting, EIG has met that and established its accreditation case. But Atlantic, of course, talks about targeting, but it also talks about whether or not the defendant in that case contemplated U.S. investment. Seche Bras tries to have a bright line between contemplation and targeting. I don't think there's such a bright line. I think it was essentially the same thing in this case. They contemplated, they targeted, they had numerous contacts with potential U.S. investors both before and after Seche went operational, which was actually May of 2011. Petra Bras remained involved in trying to raise money both before and after Seche went operational from potential U.S. investors.  We have cases for the proposition that as long as an assertion of immunity remains unresolved, you can't make the foreign sovereign litigate the merits. And as far as I can tell here, the only thing the district court has done with respect to immunity is deny summary judgment. So how do you defend the entry of a summary judgment on the merits while, at least as far as one can tell from the papers, the immunity issue is open, still open for trial? Well, that's an interesting question. I think perhaps you're referring to your own case, the process. I'm sorry. I said, I think perhaps you're referring to your own case, the case that you own. P&ID, yeah, Judd Hawkins and I. So what the district court did is it first resolved foreign sovereign immunity jurisdiction or it reached the merits. And it followed the roadmap set forth by this court. It first determined whether or not EIG had established a prima facie case based upon the three factors set out by this court in its prior opinion. That's the substantive law of immunity. But in terms of rules of civil procedure, the only thing the court did was deny summary judgment, didn't make findings, and it didn't grant summary judgment the other way. He didn't grant summary judgment the other way. But the court has an obligation when jurisdiction is raised to make a finding. It's not just a summary judgment finding. Whenever jurisdiction is raised, the court has an obligation to go beyond the pleadings, go beyond, to look at the evidence and make a finding. If you look at his opinion, he said, I find there's jurisdiction. That Patrick Ross did not establish affirmative defense. But there's one other point. It reads like he's resolving the facts. The big difference, though, between this case and the Nigeria case, too, is that in the Nigeria case that you author, Nigeria objected to any briefing on the merits. Here, Patrick Ross itself moved for summary judgment, a very different procedural stance. But I will say this. Patrick Ross has said on page 45 of his brief that the determination from the district court is not an exclusive determination. Well, as this court knows, to get jurisdiction under the collateral order, there has to be an exclusive determination. So Patrick Ross has effectively admitted, and we disagree, they have effectively admitted there's no conclusive determination. There's no conclusive determination that there would not, that there should, you know, effectively no collateral, that the collateral order doctrine doesn't apply. But I think that the real point is this. Patrick Ross will continue to challenge jurisdiction, because that's their own defense. They now have summary judgments on file. I am sure that when we get to trial, they will continue to raise it until the district court is divested of jurisdiction. I'm confused here. When a defendant challenges the existence of jurisdiction, they can file a 12B1 motion, and then either that's granted or denied. And then that's an appealable order generally in this context. If a plaintiff says after kind of going through that process, look, there are no disputed facts as to jurisdiction, and we've taken all the discovery that we need to take with respect to jurisdiction, we don't think that we need to have a trial to determine whether you have jurisdiction. We think that you can essentially grant summary judgment in favor and find that there is jurisdiction here, that there has been a waiver of sovereign immunity. Why isn't that an appropriate way for a plaintiff to proceed in a district court to resolve jurisdiction where there's no dispute over the material facts? That's a good question. And I think if you look at the way Judge Beda framed this, he said, I have to determine whether there are any disputed facts as to whether or not Petrobras has an affirmative defense, whether Petrobras meets its purpose. He found that there were no disputed facts on that issue. Based on that finding, he determined that he had jurisdiction. But did your client ask him to find that affirmatively in briefing? Did you say, Judge, we want you to enter a judgment within the meaning of Rule 54, which is any decree or order that is appealable? Did you say, we want a judgment that there is jurisdiction here, and did you ask for that relief in the meeting? We did not ask for that relief. And I think as a practical matter, plaintiffs in general, we had jurisdiction based upon this court's inquiry. We did two years of discovery, reviewed millions of pages of documents, took many depositions. We had jurisdiction. So as a plaintiff, we were not going to then say, by the way, we want to make sure you have jurisdiction, Judge. Petrobras came in and challenged Petrobras' jurisdiction. We opposed it. And the court found it had jurisdiction. Otherwise, the court would not have reached a merit. So the court did not think it had jurisdiction. It wouldn't have reached a merit. And when they challenged jurisdiction, did they challenge it by filing another 12B1 motion, or did they file a Rule 56 motion? It was in the context of a Rule 56 motion. They did not file a 12B1 motion. Well, they could have, but they chose not to. And at the same time, they chose to file their own summary judgment motion on the merits. So they were litigated simultaneously. And EIG filed a motion, cross motion for summary judgment. That was granted, but only after the court determined that it had jurisdiction. I don't think had EIG moved affirmatively, it would have been the same result. There would have been a finding that EIG had established its jurisdiction based. There would have been a finding that Petrobras did not need its burden to establish affirmative defense. I think it's really a semantic difference. And while Petrobras may move in the future a 12B1 or otherwise or try to put in evidence, it's going to have to come up, obviously, with new evidence to a challenge. Because what's interesting and actually telling is Petrobras did not submit a single one of its internal documents to challenge the crime of facial case. It did not submit a single line of testimony from any current or former employees. It relied entirely on semantic games of what targeting is and hearsay testimony. What I'm trying to understand is in the district court's mind, does the district court believe that this case is over, that the court has entered judgment for your client, and it's done other than determining damages? Yes. At this point, all we have is a trial on damages, limited trial on damages, and also mitigation, another issue, which is essentially a damages issue. But, yes, if you were to ring up Judge Madoff and say, Judge, are we finished now? What do we have to do? He'd say we have damages and mitigation. That would be his response. All right. Thank you. Thank you. Thank you. Thank you, Your Honor. Judge Katsas, let me start on the question I left on. It was out in Hambo, which is where this court worried about creating unilateral jurisdiction. And also in EIG, too, when it said, referring to Antares, we're not concerned about the some financial loss from a foreign tort not standing alone jurisdiction. Yeah, but that case, that's a little bit different. I mean, the concern about a foreign plaintiff being defrauded and then moving to the U.S. for litigation reasons is very different from a U.S. investor who's defrauded by statements projected into the world by the defendant. But I think the concern that runs through both on Hambo and the Antares case is that the mere loss of money in the United States shouldn't be enough to create jurisdiction, because otherwise it's just the plaintiff that's creating jurisdiction by the fact they are located in the United States, I think is the concern that's always been raised. And divesting a foreign sovereign of its immunity on the basis of the mere location of the plaintiff, which I think also runs across to the personal jurisdiction case. It just seems, you know, whether you think of this as a personal jurisdiction-like issue, a choice-of-all-like issue, a place of injury for extraterritoriality issue, a plaintiff in jurisdiction one harms a plaintiff in jurisdiction two. It's perfectly common for the defendant to bring an action in his home forum. I think it's common, but I think in all those cases we look for something more than the act of harm, and I think that gets to the point. More than the place of harm? I mean, that was the traditional choice-of-law rule. Well, and then I think it gets to the discussion that EIG, too, had about it's not clear whether you're in the place of harm. So, I mean, I think part of the problem with EIG's argument is they say, well, if it's not that, then look at that. Well, if it's not that, look at the other thing. And they keep pivoting away as to what it is not. But I don't think they have a good theory as to what it is. I think as to Judge Henderson's question about even if you think of targeting as marketing, there's no marketing in the United States in this case. It's that EIG learned about this opportunity from a third party and then reached out to Petrobras saying, hey, we want in, and viewed its task over a course of several months as attempting to persuade Petrobras to take its money, which never even occurred until the handoff to such an entirely independent company. Finally, before I sit down, I'd just like to endorse the questions from both Judge Katz's and Judge Wilkins. If you read the district court's opinion, I can't summon the spirit of Judge Maida up here, but the opinion is written as a summary judgment. All the district court did was deny summary judgment. Are there facts that you would like to contest going forward? I mean, this has a little bit of an unreal aspect to it. I mean, you were litigating jurisdictional issues and the merits issues simultaneously below, which you could have resisted if you wanted to. And the opinion reads as if Judge Maida is resolving the immunity issue, finding facts or finding none of the facts disputed. I don't understand Judge Maida to be finding facts. I understand Judge Maida to be taking the facts in the light and what's favorable to EIG. For instance, what are the inferences to be drawn from it? It doesn't read like the normal summary judgment opinion, which says defendants' evidence is X, plaintiffs' evidence is not X. That's a genuine conflict, so we need to go to trial. It just reads as if here are the facts, here's the record, and you lose. It's the facts related in a particular light, the same way, for instance, a court may lay out a set of facts on a motion to dismiss. And everybody understands, of course, that's just the facts as related in the complaint, even though they're related in sort of an authoritative factual tone. I think in terms of facts we'd like to contest, I don't want to prejudge my trial strategy. But I think, for instance, the Kevin Forigan testimony and what inferences are to be drawn from it. You know, EIG has one view of what Kevin Forigan's testimony meant about Petrobras' interests. We have a different view. And the district court said, well, you know, basically said, look, the Kevin Forigan testimony, I view it in a certain way, but did not say this is my holding, this is I'm entering judgment on this. Again, it was just in a summary judgment. What I don't get is I asked you whether there was some fact that was in dispute, and you said no. What you're saying, what you seem to be saying is there were no facts in dispute. But maybe we can maybe we can argue about what inferences should be drawn from those facts. And if that's if I misunderstood your question earlier, Judge Wilkins, I apologize. I took it in the context of the jurisdictional issue over the appeal, which that EIG had raised. And for the purposes of this appeal, we are not disputing the genuineness of anything. And that was my question. Then I misunderstood the question. I'm trying to get down the brass tacks of how a case is supposed to proceed. Right. OK, so if the district judge is in a posture where the district judge does not believe that there are any disputed facts with respect to jurisdiction, the district judge doesn't have to have a trial, does he or she? Well, the district judge can, if the facts are undisputed rule, yes, there is jurisdiction or no, there is a jurisdiction without having a trial, and that be a course of action that's permissible. That can be permissible on summary judgment. But then understanding your question correctly, which I did not understand when I got up the first time, understanding your question correctly there, we believe there are disputed facts as to the intent and interest of Petrobras as to whether it was soliciting or had the intent of seeking United States. But that's not an argument you made in your brief anywhere. Well, hearing it for the first time now and rebuttal it or argument. Well, it's not an argument we make in our brief because on an interlocutory appeal from an immunity issue, I can't get up here and say, you know what the judge, you know, this judge misunderstood the facts that were issued. And also, I'm not challenging a judge Wilkins because the district court didn't enter summary. Why can't you say that the district court improperly found something to be undisputed? Well, as I was actually disputed, as I understand the immunity case law on an interlocutory appeal with respect to immunity, and this comes from the qualified immunity side. It is improper to raise an interlocutory appeal where the only issue you're raising is essentially the genuineness of a material of a dispute of material fact, or whether the actual factual. Lay of the land in the district court supports the factual findings that the district court is related. That's what you can't do on. So, and only do that after the trial on the merits, you can do it after the trial on the merits. Those the Supreme Court says it's not summary judgment anymore. You're just arguing about the trial record. So, you know, but so that and second, the reason we're not challenging a hypothetical grant of summary judgment is because the district court didn't grant summary. There was no grant of summary judgment from the trial court, so there would be no basis for us to say that a summary judgment. So, so, so, so I'm trying to understand what you are saying. The plaintiffs here should have done. They should have said, judge, we ask you to find summary judgment in our favor on the issue of subject matter jurisdiction. Yes, and if the district court had entered that, then I think I might be in a different position and I'd have to think about whether and how I could appeal that. But on the record, as we have it today, and under the procedural posture, as we have it today, there was no grant of summary judgment, only the denial of the actual process. Why should we, in order in order to address this issue, we have to make a disfavored discretionary decision to exercise dependent appellate jurisdiction. Right? Why should we do that? Where I find it a little bit unclear exactly what the district court did. I find it very unclear whether you teed up this issue for the district court to say definitively resolve jurisdiction first before you get into the merits. And we're having this interesting academic debate about a partial summary judgment that can't affect your client until entry of final judgment. So, why don't we just leave it, leave it to be worked out on remand. You go back to the district court and say, judge, the immunity issue is still open. We want a trial on whatever jurisdictional facts you want a trial on. And if he, you know, if he grants you a trial problem solved, if he doesn't, you have you maybe have a procedural argument about he cut you off too soon based on denial of summary judgment. But it just gets worked out in a little more concrete way. Well, I think you should reach out and take a judge taxes for two reasons. First of all, is the respect that the United States gives to foreign sovereigns and its immunity in the United States courts. And the second is because I think the district courts could use guidance on this particular. Obviously, you know, judge made as an excellent district judge. And so if that if it could help and provide guidance, the district courts in the circuit to clarify the order of battle when it comes to these particular issues, I think that would be a great benefit. But but when did you ever ask judge made to make a. Final order or judgment on subject matter jurisdiction before proceeding to the merits. I don't have a citation to that. I do. Well, you didn't affirmatively didn't do that because you moved for summary judgment below on the merits. We did. You asked judge made to reach the merits without asking him to make a final ruling on jurisdiction. You didn't say, well, we're renewing our 12 be one motion here because we think that there's no jurisdiction and we only want you to resolve that at this time. Right. That's not what you did. That's right. We went for summary judgment on everything together. In all fact, discovery has happened. That's closed. Right. That's correct. On the merits. That's correct. So, how are you prejudiced at all? By judge made a judge made a things at this point. We've had all the discovery. I don't think that there are any dispute of fact. The operative material facts relating to just discovery to go ahead and find that there is jurisdiction. How does that prejudice you? I don't necessarily think it's a question of prejudice judge Wilkins, but rather the sort of core principle that we can't reach merits before jurisdiction. Even if we think the merits are particularly clear, even if we think the merits are undisputed. I mean, I don't understand how any of that is consistent with rule 1 rule 1 of federal rules of civil procedure, which essentially says that the rules are supposed to be construed for the speedy, just and inexpensive determination of every case. But I think I mean, I think it gets back to steel code, which comes back when the Supreme Court laid out this order of operations. I said, look, even if you think you've got really, really easy merits, sometimes you have to do hard, hard, hard jurisdiction ahead of it because of it really comes back to the. The immunity cases, which. I mean, they sort of help you because they give you a pretty bright line rule that you can insist on litigating jurisdiction 1st. That's right, but but they hurt you because the immunity is way. Or forfeit. But we've always, we've always assured our immunity. This is not like subject matter jurisdiction in the sense you can choose to litigate. That's true. I mean, if we, if we never raise immunity, certainly it's not, it's not like someone didn't raise the sequencing issue. You litigated the merits and the immunity on parallel tracks. On summary judgment. That's great. We did just said, like, the 1 thing. The judge couldn't do is enter summary judgment against you and you. Based on the outstanding immunity issue, and I, I looked at your district court papers. I mean, it's that idea. Sort of there, but it's pretty fleeting and. It's no separate discussion of the immunity sequencing issues. So. But, I mean, I think with respect to waiver, of course, it's a settled rule that it's not, it's not the citations we give. It's not even sort of the fulsomeness with it. It's have we presented the issue. Done it perhaps more clearly and of course, the issue became clearer. Once we had the resolution from the district court. Thank you.
judges: Henderson, Wilkins, Katsas